IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**KAREEM MELQUAM EDWARDS,**

    **Plaintiff,**

v.                                           **CIVIL ACTION NO. 2:06cv89**
                                               **(Judge Maxwell)**

**DAVID PROCTOR, M.D.,
ADMINISTRATOR BOBBY HAMRICK,
CORRECTIONAL MEDICAL SERVICES,
WARDEN WILLIAM S. HAINES,
JOHN/JANE DOE,
BILL ESLY, Associate Warden of Operations,
BEVERLY GANDEE, Inmate Grievance Coordinator,
JIM RUBENSTEIN, Commissioner of Corrections,**

    **Defendants.**

## REPORT AND RECOMMENDATION

This case was transferred to this Court by the United States District Court for the Southern District of West Virginia. On September 26, 2006, an order was entered granting the plaintiff leave to proceed without prepayment of fees. This matter is before the undersigned for an initial review and report and recommendation pursuant to LR PL P 83.01 and 28 U.S.C. §1915(e) and 1915A.

## I. THE COMPLAINT[1]

The plaintiff, who is an inmate in the custody of the West Virginia Department of Corrections, filed this complaint outlining events that transpired at the Huttonsville Correctional Center, which he

---

[1] The plaintiff's original, handwritten, complaint was filed on December 7, 2005 naming David Proctor, Bobby Hamrick, Correctional Medical Services, and William Haines as defendants. On May 8, 2006, before the matter was transferred to this Court, the plaintiff filed a typewritten amended complaint, which is substantially similar to the original complaint, but adds John/Jane Doe as additional defendants. For purposes of this Report and Recommendation, references to the complaint reflect the contents of the plaintiff's amended complaint.

alleges constitute medical malpractice, negligence, and negligent infliction of emotional distress. The plaintiff contends that this court has jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1395dd. In addition, the plaintiff contends that this court has supplemental jurisdiction over his state law claims for medical malpractice pursuant to 28 U.S.C. § 1367.

The substance of the plaintiff's complaint is that he suffered a gunshot wound to his abdomen in March of 1997, which required surgery. Accepting the plaintiff's allegations at face value, it would appear he experienced difficulty following the surgery with repeated incidents of swelling, bleeding and puss drainage. While the underlying charges are unclear, the plaintiff maintains that he entered into a plea agreement in the Circuit Court of Kanawha County on November 4, 2003, pursuant to which he was to receive medical treatment for non-dissolvable surgical sutures remaining from the repair of his abdominal gunshot wound.

The plaintiff indicates that he arrived at Huttonsville Correctional Center on November 21, 2003 and met with the defendant, Dr. Proctor on November 26, 2003. The plaintiff alleges he showed the plea agreement to Dr. Proctor and conveyed to him his complaints about his abdomen, suture infections and pain. The plaintiff then details efforts by his criminal attorney to obtain cooperation from the Department of Corrections in honoring the plea agreement and resolving his medical issues. Despite those efforts, the plaintiff maintains that his medical issues were not resolved.[2]

The plaintiff further alleges the defendants named in the complaint were "continuously and repeatedly negligent in administering care and treatment" to him as evidenced by the following factors:

> "1. Negligently failing to use the required judgment and proper care in arriving

---

[2] The undersigned notes that on March 5, 2007, the plaintiff submitted an affidavit indicating that on February 12, 2007, he was transported from the Mount Olive Correctional Complex to the Montgomery General Hospital where he underwent surgery to remove the non-dissolvable sutures from his abdomen. (Doc. 31).

> at a professional decision and diagnosis that [he] was in fact continuously infected with surgical sutures in his abdomen;
>
> 2. Negligently failing to diagnose and order proper testing to be conducted [to determine whether he] was in fact suffering from surgical sutures in his abdomen;
>
> 3. Negligent failing to have [him] reexamined for surgical sutures;
>
> 4. Negligently assuming that [he] tested negative for surgical sutures in his abdomen;
>
> 5. Negligently failing to ever make a proper diagnosis of surgical sutures in [his] abdomen;
>
> 6. Negligently failing to counsel and advise, and inform [him] regarding his medical status, the medication prescribed, the appropriate testing and alternate testing treatment that was available at a (sic) outside surgical hospital;
>
> 7. Negligently ignoring and failing to consider and provide [him] with medical information, or literature on non-dissolvable surgical sutures, and the medical treatment available..."

(Doc. 15, p. 6).

The defendant also alleges that the defendant, Correctional Medical Services was equally negligent as set forth above. As a result of the negligence and malpractice of Dr. Proctor and Corrective Medical Services, the plaintiff alleges that he has suffered injuries and damages that include future compensable general damages and special damages including loss of future earning toward medical expenses. Finally, the plaintiff alleges that the defendants' actions resulted in the negligent infliction of emotional distress.

As relief, the plaintiff seeks nominal damages in the amount of $1500.00, compensatory damages in the amount of $2000.00, and punitive damages in the amount of $5,100,000.

## II. **STANDARD OF REVIEW**

Because plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court

must review the complaint to determine whether is it frivolous or malicious. Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. Complaints which are frivolous or malicious, must be dismissed. 28 U.S.C. 1915(e).

A complaint is frivolous if it is without arguable merit either in law or fact. Neitzke v. Williams, 490 U.S. 319, 325. However, the Court must read *pro se* allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519, 520 (1972). A complaint filed *in forma pauperis* which fails to state a claim under Fed. R. Civ. P. 12(b)(6) is not automatically frivolous. See Neitzke at 328. Frivolity dismissals should only be ordered when the legal theories are "indisputably meritless," Id. at 327.

### III. ANALYSIS

#### A. Medical Negligence

To establish a medical negligence claim in West Virginia, the plaintiff must prove:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3. When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. Banfi v. American Hospital for Rehabilitation, 529 S.E.2d 600, 605-606 (2000).

Additionally, under West Virginia law, certain requirements must be met before a health care

4

provider may be sued. W.Va. Code §55-7B-6.   This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va. 2004).[3]

With regard to the appropriate standard of care, plaintiff has completely failed to sustain his burden of proof. Plaintiff does not assert, much less establish, the standard of care for the diagnosis

---

[3] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

or treatment of non-dissolvable sutures.[4] Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to the defendants' breach of the duty of care. Moreover, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6. Accordingly, even if this court has supplemental jurisdiction over the plaintiff's state law claims for medical malpractice, summary dismissal is appropriate

**B. 42 U.S.C. § 1983**

Although not specifically articulated, a liberal reading of the plaintiff's complaint indicates that he may be attempting to state a claim under 42 U.S.C. § 1983 which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Therefore, in order to state a claim under 42 U.S.C. § 1983, the plaintiff must demonstrate that a person acting under color of state law deprived him of the rights guaranteed by the Constitution or federal laws. Rendall-Baker v. Kohn, 547 U.S. 830, 838 (1982).

**1. Corrective Medical Services**

---

[4] Plaintiff offers no pleadings, affidavits, or declarations from any medical professional that establishes the applicable community standards for the diagnosis or treatment of non-dissolvable sutures.

It is clear that Corrective Medical Services is not a "person" for purposes of 42 U.S.C. § 1983 and should be dismissed from this action with prejudice.

**2. John/Jane Doe**

A plaintiff may name "John Doe" as a defendant when the identity of a defendant is unknown. Boyd v. Gullet, 64 F.R.D. 169 (D. Md. 1974). However, a district court is not required "to wait indefinitely" for the plaintiff to provide the defendant's true identity to the Court. Glaros v. Perse, 628 F.2d 679, 685 (1st Cir. 1980). The plaintiff has had sufficient time to identify all the defendants in this action. Moreover, beyond adding Jane/John Doe to the caption of his case, he has provided no information as to how or when Jane/John Doe violated his constitutional rights. Accordingly, the complaint against Jane/John Doe should be dismissed.

**3. David A. Proctor**

The Eighth Amendment protects prisoners from punishments which "'involve the unnecessary and wanton infliction of pain' or are grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 346 (1981) (citations omitted). These principles apply to the conditions of a prisoner's confinement and require that the conditions within a prison comport with "contemporary standard[s] of decency" to provide inmates with "the minimal civilized measure of life's necessities." Id. at 347; see also Farmer v. Brennan, 511 U.S. 825, 832 (1994) (explaining that both the treatment of prisoners and the conditions of their confinement are subject to scrutiny under the Eighth Amendment). Therefore, while "'the Constitution does not mandate comfortable prisons,'" it also "does not permit inhumane one." Id. (quoting Rhodes, 452 U.S. at 349).

To state a claim under the Eighth Amendment, plaintiff must show that defendants acted with deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A

cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[5]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial

---

[5] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905,907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

In the instant case, while the plaintiff may be able to establish that the non-dissolvable sutures in his abdomen presented a serious medical condition, satisfying the objective component of an Eighth Amendment claim, he cannot satisfy the subjective component of an Eighth Amendment claim, because there is no evidence that Dr. Proctor, or any other individual defendant acted with deliberate indifference. The information supplied by the plaintiff indicates that he was seen numerous times at the medical unit at Huttonsville Correctional Center following his incarceration at that facility. In addition, Dr. Proctor sent the plaintiff to an outside facility for at least one and perhaps three CAT scans. While Dr. Proctor may have mis-diagnosed the plaintiff by failing to discover that he had non-dissolvable sutures, "deliberate indifference" as required by the Eighth Amendment is a standard higher than simple negligence, and negligence alone is not actionable under § 1983. Thus, ordinary medical malpractice

9

based upon negligence in providing care does not state a claim under the Eighth Amendment. See Estelle, supra at 106. ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Furthermore, the large majority of cases alleging medical Eighth Amendment violations concern the denial of medical care to a prisoner rather than the provision of substandard care; "no care," rather than "bad care." See e.g., Holmes v. Sheahan, 930 F.2d 1196 (7th Cir.), cert. denied, 502 U.S. 960 (1991). Here, the plaintiff may have received "bad care," but he did receive care. Therefore, the plaintiff's complaint against Dr. Proctor fails to state an 8th Amendment claim and should be dismissed on that basis, as well.

### 4. Bobby Hamrick, Warden William S. Haines, and Bill Esly

In order to establish personal liability against a defendant in a § 1983 action, the defendant(s) must be personally involved in the alleged wrong(s); liability cannot be predicated solely under *respondeat superior*. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). The plaintiff does not allege any personal involvement with his medical care by Hamrick, Haines, and Esly. Instead, he appears to allege that they are responsible for their staff and their staff's actions. When a supervisor is not personally involved in the alleged wrongdoing, he may be liable under § 1983 if the subordinate acted pursuant to an official policy or custom which he is responsible, see Fisher v. Washington Metropolitan Area Transit Authority, 690 F.2d 1113 (4th Cir. 1982); Orum v. Haines, 68 F. Supp.2d 726 (D.D. W.Va. 1999), or the following elements are established: "(1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a 'pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices,' and (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury

10

suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir.), *cert. denied,* 513 U.S. 813 (1994).

"Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm or constitutional injury." Id. "A plaintiff may establish deliberate indifference by demonstrating a supervisor's 'continued inaction in the face of documented widespread abuses.'" Id.

The plaintiff makes no allegations in his complaint which reveals the presence of the required elements for supervisory liability against Hamrick, Haines, and Esly. Further, the undersigned notes that the Fourth Circuit has held that non-medical personal may rely on the opinion of medical staff regarding the proper treatment of inmates. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Thus, Hamrick, Haines, and Esly could rely on the opinion of Dr. Proctor as to whether the plaintiff needed additional medical care. Consequently, the undersigned finds that the plaintiff has failed to state a claim against Hamrick, Haines, and Esly, and the complaint against them should be dismissed.

**5. Beverly Gandee and Jim Rubenstein**

On June 14, 2007, the plaintiff was granted permission to add these two individuals as defendants.[6] The plaintiff alleges that Ms. Gandee is the Inmate Grievance Coordinator for the West Virginia Division of Corrections and responds to all inmate grievances. Jim Rubenstein is the

---

[6]This motion also added Bill Esly as a defendant. Because he is employed at the Huttonsville Correctional Center, in the context of this Report and Recommendation, his potential liability was discussed in the preceding section with Bobby Hamrick and William Haines.

11

Commissioner of Corrections. The plaintiff alleges that these defendants violated his Fifth, Eighth, and Fourteenth Amendments.

The United States Supreme Court has held that state officials sued in their official capacities do not constitute "persons" within the language of 42 U.S.C. § 1983. Will v. Michigan, 491 U.S. 58 (1989). The Court considered a suit against a state official in his or her official capacity the equivalent of a suit against the state itself. Id. at 65. The Court concluded that, absent any congressional intent to override states' immunity, the eleventh amendment bars § 1983 suits against state employees in their official capacity. See id. At 56-57.

Conversely, a suit against an official in his or her individual capacity does not seek payment from the state treasury, but from the personal funds of the individual, and therefore, is not a suit against the state or the state office that the individual occupies, and the individual is not protected by the holding of Will. See Pontarelli v. Stone, 930 F.2d 104, 11 n. 17 (1st Cir. 1991). However, the mere fact that the plaintiff alleges that he is suing Gandee and Rubenstein in their individual capacities does not make them liable for any alleged wrongdoing. This court must analyze whether the complaint alleges that they acted either outside the scope of their respective office or, if within the scope, acted in an arbitrary manner grossly abusing the lawful powers of their office. Scheuer v. Rhodes, 416 U.S. 232, 235 (1974).

Here it is clear that Gandee and Rubenstein were both acting within the scope of their positions with the Division of Corrections, if they, in fact, denied approval for additional medical treatment. Furthermore, the plaintiff has presented nothing to suggest that they acted in arbitrary manner which grossly abused the lawful powers of their office. Therefore, the plaintiff's complaint against Gandee and Rubenstein is clearly against their official capacity and is barred by § 1983.

## IV. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the complaint be **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915A and 1915(e) for failure to state a claim.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Court. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet.

DATED: February 26, 2008

        /s/ James E. Seibert
        JAMES E. SEIBERT
        UNITED STATES MAGISTRATE JUDGE